**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MARIA ROGERS, INDIVIDUALLY AND anf of D.R. AND AS REPRESENTATIVE OF THE ESTATE OF LINDA MICHELLE ROGERS, DECEASED, JOSE FISCAL AND AMPARO CAMACHO**<br>*Plaintiffs*<br><br>**ADNRES PORTILLO AND BRISELDA PROTILLO, INDIVIDUALLY anf of A.P. AND A.P.**<br><br>**CLIFTON ROGERS**<br>*Intervenors,*<br><br>VS.<br><br>**ATMOS ENERGY CORPORATION**<br>*Defendant.* | CASE NO: 3:18-CV-0869-M |

## CLIFTON ROGERS' AMENDED PETITION IN INTERVENTION

TO THE HONORABLE JUDGE OF SAID COURT:

Subject to the motion to remand (Doc. 5) and without waiving any right to remand of the captioned action to state court, Intervenor, Clifton Rogers (hereinafter referred to as "Intervenor"), as a matter of course under Fed. R. Civ. P. 15(a)(1), files his first amended Petition In Intervention against Atmos Energy Corporation, hereinafter referred to from time to time as "Defendant" or "Atmos", and for cause of action would respectfully show the Court as follows:

# I.
## PARTIES

1.  Plaintiff Maria Rogers is an individual who also appears as representative of the Estate of Linda Michelle Rogers ("Michelle"), who died intestate on February 23, 2018. Maria Rogers also appears as next friend of D.R., her minor child. Jose Fiscal appears on his own behalf. Amparo Camacho is an individual appearing on her own behalf. All the above-referenced parties are Plaintiffs residing in Dallas County, Texas.

2.  Intervenor Clifton Rogers is an individual residing in Franklin County, Kentucky. Intervenor is the ex-spouse of Plaintiff Maria Rogers and the father of Michelle Rogers. As Intervenor herein he may only be contacted via his undersigned counsel.

3.  Intervenors Andres Portillo and Griselda Portillo, Individually and as next friend of her minor children, A.P. and A.P., are individuals residing in Dallas County, Texas. As Intervenors herein they may only be contacted via their counsel.

4.  Atmos Energy Corporation is the Defendant. It is headquartered in Dallas County, Texas, and incorporated in Texas, (according to itself) is one of the country's largest natural gas distributors based on number of customers. Atmos delivers natural gas through regulated sales and transportation arrangements to over three million residential, commercial, public authority and industrial customers in eight states located primarily in the South. Atmos also operates one of the largest intrastate pipelines in Texas based on miles of pipe. Over 1.6 million homes and businesses receive gas through the division of Atmos operating in the Dallas County area. Atmos can be served with process and commanded to answer and appear herein by serving its registered agent for service: Corporation Services Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

## III.

## VENUE AND JURISDICTION

5.   This case was removed to this Court from the state court in which it was originally filed. Defendant removed this case based on an assertion of federal question jurisdiction. Jurisdiction before this Court is disputed by Plaintiffs and Intervenors and is the subject of a pending motion to remand.

6.   Venue is proper in the Dallas Division, Northern District of Texas as all actions of which Plaintiffs and Intervenors complain occurred in Dallas County, Texas.

## IV.
## VICARIOUS LIABILITY AND RESPONDEAT SUPERIOR

7.   Whenever it is alleged in this petition that Atmos did or failed to do anything, it is meant that Atmos acting by and through its agents, predecessor in interest in the relevant pipeline, predecessor in ownership of the relevant pipeline, employees, principals and vice principals acted or failed to act as alleged. The actions and failures of Atmos that caused the events described below were actions of its vice principals and/or actions approved and ratified by the corporation and the corporation breached non-delegable duties.

## V.
## FACTUAL ALLEGATIONS

8.   On February 23, 2018, Clifton Rogers' minor child, Michelle Rogers, was killed by an explosion of natural gas leaking from a pipeline owned, operated, controlled and maintained (or in this case *not* maintained in compliance with the minimum applicable safety regulations) by Atmos. Sometime after the explosion, Michelle died and multiple attempts at resuscitation failed. Michelle's brother, D.R., was severely and permanently injured in the explosion. Michelle's grandmother, Amparo Camacho, was severely injured with multiple broken bones, brain trauma and lacerations. Michelle's mother, Maria, and Jose Fiscal both suffered injuries and witnessed

and experienced the explosion; afterwards they held Michelle while she expired. The home and virtually all the property of all the Plaintiffs that was in and around the home were destroyed.

9.  The result of Atmos' practices and operations is fairly demonstrated in figure 1 below:



**Figure 1**: 3534 Espanola Drive shown. The home was blown from its beams, slightly rotated destroying virtually every internal structure and mechanical system in the home.

10. The most tragic loss caused by Atmos' practices and operations was the death of Clifton Rogers' daughter Michelle (pictured in figures 2 thru 4 below):



**Figure 2**: Michelle Rogers



**Figure 3**: D.R., Michelle Rogers, and Clifton Rogers



**Figure 4**: Clifton Rogers, Michelle Rogers, and D.R.

11.     The home at 3534 Espanola Drive where all the Plaintiffs lived prior to its destruction was surrounded by the Atmos system.  In the alley to the south, between Espanola and Durango (hereafter "the alley") a pipe served each of the residences on the south side of Espanola and the north side of Durango for the 3500 block of each street.  This pipe is part of a distribution network of pipelines that blanket Dallas County.  The system is constructed through a mismatched Frankenstein-style array of pipes, couplings, fittings and valves.  The system has coated steel pipes (that require cathodic protection as seen in the system in the alley), bare-steel pipes, old to ancient cast iron pipes, and medium density polyethylene pipes.  The pipes of various materials are joined through poor integrity Dresser couplings, compression couplings, ferrous welds and butt-fusion welds.  As built and as maintained, the system cannot be maintained in compliance with the minimum safety rules and regulations when operated in the manner it is operated by Atmos.

12.     For want of any accountability for the gross violations of the safety regulations that caused these events, Intervenor will present himself before the Court asking the judicial branch for assistance to secure a safe future; safe from the perils that Atmos' operation presents while Texas' executive branch continues to utterly fail Plaintiffs, Intervenor, and residents of Dallas County.

13.     The system is required to be maintained and operated in accordance with the minimum safety regulations set forth in 49 CFR parts 190 – 192 as adopted by 16 TAC Chapter 8.  Atmos does not maintain its system as required by these safety regulations.  Their failure to do so has led to over 4,000 recent pipeline leaks, including at least 28 in and around the 3500 block of the Espanola/Durango alley in February 2018.  These leaks form from a combination of mechanical and corrosion damage that Atmos is duty-bound at all times to *prevent*.  The regulations do not

merely address the requirement to repair pipes; the regulations require operation that *prevents* the leaks.

14. More regionally, but within the borders of just the State of Texas, Atmos has repaired over 200,000 leaks since 2003 – just in the Mid-Tex division – through a pattern of intentional recalcitrance that pads its financial bottom line. The total number of undetected and unrepaired leaks is unknown but believed to be very high due to Atmos' inadequate leak surveys.

**Lost and Unaccounted for Gas**

15. Atmos is divided into multiple divisions. The division in Texas that operates the culprit system is the Mid-Tex division. Atmos Mid-Tex (Atmos) meters the gas it distributes at a "city gate". Atmos then meters the gas again at customer meters. On an annual basis Atmos loses – lost and unaccounted for gas massive amounts of gas through its porous system – 123,000,000,000 cubic feet of natural gas in the past few years. Most of the 123 billion cubic feet is forced through leaks in Atmos' system. The system has so many leaks that Atmos pushing millions of cubic feet per day of fugitive gas into the environment – intentionally.

**Timeline of events in January and February 2018**

16. In early January 2018, Atmos realized it needed to repair leaks in the 3500 block of the Espanola/Durango alley. A right-of-way permit was applied for and obtained by Atmos from January 11 – 18, 2018. Specifically, three areas required excavation, pipeline repair and resurfacing. Atmos never performed the repairs.

17. During all of February 2018, gas leaked from the Atmos pipeline in the 3500 block of the Espanola/Durango alley. February weather was unseasonably, but foreseeably, wet.

18. On February 20, 2018, the smell of fugitive gas and anomalies in the alleyway behind her home caused Plaintiff Maria Rogers to contact Atmos. Atmos was dismissive and refused to respond to this alarm in northwest Dallas as required by 49 CFR Part 192.

19. On February 21, 2018, fugitive gas continued leaking from the Atmos line, but due to the moisture conditions in the upper of the soil, the fugitive gas could not readily escape to the surface and migrated through the sub-surface soil; it instead collected under 3527 Durango (across the alley from 3534 Espanola) in the crawl space where the soil was dry and protected from the weather. As the gas collected, it accumulated to an explosive level and found an ignition point. At that moment the gas exploded and destroyed that residence.

20. After this explosion, Atmos did nothing to investigate or inspect its lines or initiate its emergency response plan as required in 49 CFR Part 192. Instead, Atmos continued pushing explosive gas from the leaks at increased pressure.

21. On February 22, 2018, the fugitive gas continued escaping from the Atmos line unabated. The gas found a pathway under 3515 Durango. As the gas collected there, it accumulated to an explosive level and found an ignition point at a stove the resident, Mr. Portillo, was beginning to use. At that moment the gas exploded and destroyed the residence. Mr. Portillo was injured.

22. After this explosion, Atmos did nothing to investigate or inspect its lines. Rather, Atmos lied to the Texas Railroad Commission and blamed cooking activity.

23. Atmos continued pushing fugitive gas through the leaking pipes, which spread in the subsurface toward the Plaintiffs' home.

24. On February 23, 2018, the fugitive gas continued to leak from the Espanola/Durango alley of the 3500 block – unabated. In the early morning hours Maria, Jose, Amparo, D.R., Michelle, were asleep in the home. Michelle Rogers was awake, excitedly preparing for her

school cheer competitions. During this time, gas was accumulating in the crawl space of 3534 Espanola Drive. As the gas collected, it accumulated to an explosive level and found an ignition point. At that moment, the gas exploded and destroyed the residence. Each of the residents in the home at the time suffered tremendous conscious physical pain and anguish from the blunt force of the blast and the heat of the incinerating fire. Intervenor suffered the tragic loss of his daughter in the explosion and fire.

25. Atmos' leak prevention and leak experience in its system is the worst in the country when compared to any other operator in the United States. Atmos has designed practices and procedures that promote the formation of unabated leaks throughout its system. Atmos exploits a cozy relationship with the Texas Railroad Commission (RRC), the regulatory body for Texas intrastate pipelines. RRC inexplicably countenances Atmos' failures toward public safety. The RRC has not enforced safe operation of the Atmos system, but instead tolerates and thus encourages the deadly behavior of Atmos. Not coincidentally, year after year RRC officials leave the regulatory body only to find themselves warmly received by Atmos and its consultants. By way of example, Mary McDaniel had a 27-year tenure with the RRC and spent 7 years with RRC's Pipeline Safety office. McDaniel left the RRC for BakerRisk who presently consults with the RRC **and with** Atmos. BakerRisk was the primary coordinator for Atmos following the triple explosion events in the 3500 block of Durango and Espanola.

26. As will be addressed in future filings by Intervenor following initial discovery, the RRC's abdication of its regulatory responsibilities in connection with the Atmos system will require Intervenor to seek additional, extraordinary relief by way of permanent injunction.

27. In the hours and days following the three house explosions, Atmos and the RRC identified 28 leaks of which the RRC was previously unaware.

28. Although compliance with 49 CFR 190 – 192 is not optional, Atmos refuses to comply with these few and rather simple regulations along with numerous industry codes and standards covering compliance details. The RRC is aware of but nevertheless allows Atmos' deadly conduct to continue unabated. But for Atmos' failure to comply with these regulations and the RRC to enforce the regulations, the events of February 21, 22 and 23, 2018, would not have occurred. These knowing failures to comply with the regulations were reasonably certain to cause and did cause the results that Atmos inflicted on Plaintiffs and Intervenor on February 23, 2018. This conduct is murder as defined by the Texas Penal Code.

## VI.
### CONDUCT OF ATMOS AND LIABILITY

29. The conduct of the Atmos constitutes negligence in failing to exercise ordinary care as outlined above. The conduct of Atmos constitutes negligence *per se* for violations of 49 CFR 190 – 192, 199. The conduct of Atmos constitutes gross negligence, aggravated assault, injury to a child, and murder as described in Civil Practice & Remedies Code, Sec. 41.008 under the *knowing* standard set for there and in the Texas Penal Code. Such conduct was a proximate cause of the occurrence, injuries, damages and death in question. But for Atmos' actions and failures, the occurrence, injuries and death in question would not have happened. These events and damages were the foreseeable result of the conduct of Atmos.

30. Ordinary care required Atmos to follow the minimum safety regulations; Atmos did not do so. State law and federal regulations were violated. The regulations that Atmos violated which were a proximate cause of the gas leaks from it system that exploded include, but are not limited to the following from 49 CFR:

- 191.23
- 191.25
- 192.273

- 192.455
- 192.461
- 192.463

- 192.465
- 192.447
- 192.483

- 192.487
- 192.603
- 192.605
- 192.613
- 192.614
- 192.615
- 192.616
- 192.617
- 192.625
- 192.703
- 192.721
- 192.723
- 192.751
- 192.753
- 192.733
- 192.1001
- 192.1007
- 192.1011

31. By way of clarification, the fugitive gas, which caused these explosions, was pushed into the soils near Plaintiffs' and Intervenors' homes by Atmos Energy Corporation (Atmos). The pipeline system that leaked the gas begins and terminates within the borders of Texas. All relevant portions of the pipeline were buried in Dallas County, Texas in approximately 1946 - 1947. The pipeline operator must follow mandatory, minimum safety regulations. Those regulations are made and enforced by the State of Texas.

32. All of the regulations relevant to the operation of the culprit pipeline and violations by the operator relevant to the explosions are Texas' regulations. See supra at page 6. By way of supplementation, Plaintiffs and Intervenors are providing the Court with an explanation of how the regulations apply and are enforced.

33. Gas pipelines follow a pattern of federal regulations found at 49 CFR Parts 191 and 192. Texas has adopted these regulations as Texas' own regulations. See 16 Tex. Admin. Code § 8.1. The regulatory body in Texas concerning these regulations is the Railroad Commission. When enforcing these regulations, the Texas regulations are coded and applied using the federal regulation description.

34. To demonstrate the interplay between the state regulations that use the federal nomenclature, see Exhibit A, Railroad Commission of Texas, Safety Division, Evaluations with Violations Report. The attached Exhibit A is an excerpt of a 377-page summary of the

regulation violation history of the MidTex Division of Atmos. The MidTex Division is the operator of the culprit pipeline.

35. By way of example, page 2 of Exhibit A, the Texas requirement is described as a CFR reference. For Evaluation ID 20121148 the Railroad Commission describes the requirement as 49 CFR 192.613(a). Texas' violation code is codified as 192-613-005. That particular violation by Atmos in Dallas, Texas dealt with Atmos' failure to take or complete appropriate action as a result of changes in leakage history. During a 12-month period, more than ten percent of the gas in Atmos' system became fugitive (lost and unaccounted for).

36. This example clarifies that although Texas is adopting the naming conventions of the CFR related to gas pipeline operation, these regulations are Texas' own. They are adopted by Texas, implemented by Texas, and as seen in Exhibit A, enforced by Texas. No federal question is implicated.

## VII.
## Texas Civil Practice & Remedies Code Chapter 71

37. This lawsuit and intervention are brought in part under the provisions of the Wrongful Death Act of the State of Texas. Additionally, this case is brought for the recovery of damage under the Survival Statute of the State of Texas for the Estate of Linda Michelle Rogers.

## VIII.
## Notice of Intent

38. Intervenor hereby notifies Atmos of his intent to avail himself of all available relief pursuant to the Texas Deceptive Trade Practices Act. Intervenor shall amend or supplement this Petition in Intervention in connection with the events that made the basis of the claims herein not sooner than sixty days from filing of this Petition in Intervention.

## IX.
## DAMAGES

*Principal Relief Sought*

39. Intervenor would show that by reason of the occurrence in question, he has suffered loss of companionship and society in the past and will continue to suffer such losses in the future, mental anguish in the past and future, all due to his child's death.

40. Intervenor is seeking exemplary damages for which he now sues.

41. Intervenor reserves the right to plead for additional equitable relief.

## X.
## GROSS NEGLIGENCE, AGGRAVATED ASSAULT, INJURY TO A CHILD, AND MURDER

42. Intervenor would respectfully show this Court and a jury that the injuries and damages of Intervenor were caused by the gross negligence of Atmos including the acting by and through Atmos' employees, agents, officers and representatives in the course of employment for Atmos. Intervenor would further show, at the time and on the occasion in question, Atmos' actions and/or inactions constituted intentional, heedless and reckless disregard for the rights and safety of Michelle Rogers, exhibiting such an entire want of care as to indicate their conduct was the result of conscious indifference to the rights, welfare, and safety of others, including the Michelle Rogers, Decedent herein. Accordingly, Atmos should be held liable to Intervenor for exemplary damages in an amount calculated to punish the Atmos. The level of culpability is at least to a level of knowing, if not intentional. Intervenor therefore brings suit here against Atmos pursuant to Texas Civil Practice & Remedies Code, Sec. 41.008(c)(1), (4) and (7).

43. Additionally, Atmos acted with gross negligence and recklessness in hiring and retaining unfit and incompetent maintenance personnel, agents, supervisors and management. Because of personnel decisions of Atmos, from top executive to field level workers, the Atmos system was

operated fully in violation of the minimum safety standards applicable to the system that were designed to prevent the occurrence in question. Atmos also breached non-delegable duties of the corporation.

## XI.
### DOCUMENTS TO BE USED

44. Intervenor hereby gives notice to Atmos of his intent to use all documents exchanged and produced between the parties (including, but not limited to, correspondence, pleadings, records and discovery responses) during the trial of this matter.

## XIII.

45. Intervenor expressly reserves the right to amend his petition in intervention anytime to show any additional facts, circumstances, causes of action, and relief and damages, if necessary. All conditions precedent have been performed or have occurred.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Intervenor respectfully prays that Atmos answer the intervention herein, and that upon final trial, Intervenor have judgment against Atmos for all damages proved, all of which are within the jurisdictional limits of this Court, cost of court, exemplary damages, pre-judgment and post-judgment interest in accordance with the law and all other appropriate relief to which Intervenor shows himself justly entitled both at law and in equity; that the events which gave rise to the causes of action described above never again be allowed to again manifest.

Respectfully submitted,

**SCOTT H. PALMER, P.C.**

By: */s/ Scott H. Palmer*
**SCOTT H. PALMER**
State Bar No. 00797196
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com

**LAW OFFICES OF SEAN R. COX**

By: */s/Sean R. Cox*
**SEAN R. COX**
State Bar No. 24031980
Law Offices of Sean R. Cox
P.O. Box 130864
Dallas, TX 75313
Telephone: (214) 500-9280
Facsimile: (844) 501-8688
sean@coxappellate.com

**LAW OFFICE OF PETE ROWE, P.C.**

By: */s/ Pete Rowe*
**PETE ROWE**
State Bar No. 24072314
Phone: (817) 637-3830
Phone: (469) 554-6638
Facsimile: (972) 346-6783
pete.rowe.tx@gmail.com

**ATTORNEYS FOR INTERVENOR
CLIFTON ROGERS**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was forwarded to all counsel of record, in a manner authorized by Rule 5, of the Federal Rules of Civil Procedure, on April 27, 2018.

*/s/ Scott H. Palmer*
SCOTT H. PALMER